NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| JANETTE MARIE GARRICK, | |
| Plaintiff, | Civil Action No. 09-01064 (JAP) |
| v. | **OPINION** |
| COUNTY OF MONMOUTH, et al., | |
| Defendants. | |

This action is brought by plaintiff Janette Marie Garrick ("Plaintiff") against defendants the County of Monmouth ("Monmouth County"), the Monmouth County Sheriff's Office (the "Sheriff's Office"), the Monmouth County Correctional Institution ("MCCI"), Correct Care Solutions, LLC ("Correct Care"), Angelique Colbert, D.O., Beth Roach, M.D. and Joann M. Loeffler, R.N. ("Nurse Loeffler"). This matter is presently before the Court upon a motion by Monmouth County and the Sheriff's Office (together, the "Moving Defendants") for summary judgment. [docket no. 26]. Plaintiff opposes the motion. The Court decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons set forth herein, the Court denies the Moving Defendants' motion for summary judgment.

**I.   Background**

Plaintiff filed this action in connection with the medical treatment she received during her detention at MCCI in and around March and April of 2007. Plaintiff's complaint states claims under the United States and New Jersey Constitutions, and various New Jersey state laws.

1

Plaintiff claims that Defendants failed to provide her with adequate medical care during her time as a pre-trial detainee at MCCI.

On January 5, 2007, Monmouth County entered into a written contract with Correct Care to provide medical, dental and psychiatric services for the inmates and residents at MCCI. Moving Defendants ("Mov. Def.") Rule 56.1 Statement ¶ 4.  As a result, pursuant to the Sheriff's Office Department of Corrections Policy and Procedure 24,00, Correct Care became "responsible for arranging all levels of health care and ensuring the quality and accessibility of all health care services to the inmates of the facility and management of health care personnel." Id. at ¶ 3.  The Sheriff's Office Department of Corrections has established various other relevant policies and procedures governing the provision of health care at MCCI, including Policy and Procedure 24.05, which (1) requires that inmates have an opportunity to have their health care requests evaluated and addressed by health professionals and responded to in a reasonable time and manner and (2) creates a daily sick call process by which pre-trial detainees health care needs are addressed.  Id. at ¶ 6.

Plaintiff was admitted to MCCI on March 7, 2007 as a civil detainee on an immigration matter.  Id. at ¶ 12.  On or around March 14, 2007, Plaintiff began feeling pain in her left leg and advised Officer Mecca, a pod officer, of such pain at that time.  Id. at ¶ 14 and 15.  Officer Mecca documented Plaintiff's complaints and called the MCCI medical unit to inform them of the same.  Id. at ¶ 15 and 16.  Plaintiff did not received medical treatment for these complaints. Mov. Def. Exhibit J, Garrick Deposition at 27, 34 and 42.  Several days later, on March 28, 2007, Plaintiff noticed and complained of swelling and tenderness in her left calf and was seen by Nurse Loeffler at the medical unit of MCCI on that same day.  Mov. Def. Rule 56.1 Statement ¶ 17, 18 and 20.  Nurse Loeffler determined that Plaintiff was possibly suffering from Deep

Venous Thrombosis ("DVT") and, as a result, ordered an ultrasound of Plaintiff's left calf. Plaintiff ("Pl.") Exhibit 9, CCS Medical Record at CCS R26 0021 and 0030. DVT is a condition with dangerous and potentially life threatening side effects, including the possibility of blot clots traveling from the site of DVT to the brain, lungs or heart. Pl. Exhibit 20, Loeffler Deposition at 67-68; Pl. Exhibit 21, Roach Deposition at 79-83. Nurse Loeffler ordered the ultrasound to be done on a routine basis, meaning within 5 to 7 days. Pl. Exhibit 9, CCS Medical Record at CCS R26 0030. Plaintiff's condition worsened in the following days and she continued to seek medical care at MCCI, with varying success, for the pain in her left calf. Pl. Exhibit 9, CCS Medical Record at CCS R26 0020-21; Pl. Exhibit 10, MCCI Log Book at page 216.

On April 3, 2007, Plaintiff was administered an ultrasound test on her left calf, which revealed DVT in the lower left extremity. Pl. Exhibit 9, CCS Medical Record at CCS R26 0019; Pl. Exhibit 8, American Diagnostics Services Chart at final page. Based on the results of this ultrasound, Plaintiff was transferred to Centra State Medical Center, where she was treated with emergency anti-coagulant therapy. Pl. Exhibit 5, Stephen G. Hurst Report at pages at 6 and 7; Pl. Exhibit 6, David M. Richmand Report at page 3; Pl. Exhibit 7, Gerald J. Hansen Report at page 2. After having a CAT scan angiogram of her chest at Centra State Medical Center, it was determined that Plaintiff had suffered a bilateral pulmonary embolism. Id. According to each of Plaintiff's medical experts, Dr. Stephen G. Hurst, Dr. David Richmand and Dr. Gerald Hansen, the ultrasound of Plaintiff's left calf should have been administered on an urgent basis. Pl. Exhibit 5, Stephen G. Hurst Medical Report at page 2 (opining that Plaintiff's DVT could have been prevent in its extent if Plaintiff had been evaluated and treated earlier in her course); Pl. Exhibit 6 at page 6-7 (opining that the care given to Plaintiff was "dangerous and considerably

beneath reasonable, acceptable standards"); Pl. Exhibit 7 at page 4 (opining that the care given to Plaintiff was "not within the accepted standards of care" and "substandard").

## II. Legal Standard

A court shall grant summary judgment under Rule 56(c) of the Federal Rules of Civil Procedure "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The substantive law identifies which facts are critical or "material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A material fact raises a "genuine" issue "if the evidence is such that a reasonable jury could return a verdict" for the non-moving party. *Healy v. N.Y. Life Ins. Co.*, 860 F.2d 1209, 1219 n.3 (3d Cir. 1988).

On a summary judgment motion, the moving party must show, first, that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party makes this showing, the burden shifts to the non-moving party to present evidence that a genuine fact issue compels a trial. *Id.* at 324. In so presenting, the non-moving party may not simply rest on its pleadings, but must offer admissible evidence that establishes a genuine issue of material fact, *id.*, not just "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The Court must consider all facts and their logical inferences in the light most favorable to the non-moving party. *Pollock v. American Tel. & Tel. Long Lines*, 794 F.2d 860, 864 (3d Cir. 1986). The Court shall not "weigh the evidence and determine the truth of the matter," but need determine only whether a genuine issue necessitates a trial. *Anderson*, 477 U.S. at 249. If the non-moving party fails to demonstrate proof beyond a "mere scintilla" of evidence that a genuine issue of material fact exists, then the

Court must grant summary judgment. *Big Apple BMW v. BMW of North America*, 974 F.2d 1358, 1363 (3d Cir. 1992).

### III.   Legal Analysis

Pre-trial detainees in state custody are afforded Constitutional protection against inadequate medical care by the Due Process Clause of the Fourteenth Amendment. *Hubbard v. Taylor,* 399 F.3d 150, 164-165 (3d Cir. 2005); *Natale*, 318 F.3d at 581.  In assessing the denial of medical care to a pre-trial detainee, the inquiry is whether the denial was "imposed for the purpose of punishment or whether it [was] but an incident of some other legitimate governmental purpose." *Bell v. Wolfish,* 441 U.S. 520, 538, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979).  This inquiry, however, involves application of the Eighth Amendment deliberate indifference standard because the Supreme Court has determined that the Fourteenth Amendment affords pre-trial detainees protections that are "at least as great as the Eighth Amendment protections available to a convicted prisoner." *City of Revere v. Massachusetts Gen. Hosp.*, 463 U.S. 239, 244, 103 S.Ct. 2979, 77 L.Ed. 605 (1983); *see also Hubbard,* 399 F.3d at 165-67 (clarifying that the Eighth Amendment standard only acts as a floor for due process inquiries into medical and non-medical conditions of pretrial detainees.)

The Eighth Amendment requires that inmates and prisoners are provided adequate healthcare. *Estelle v. Gamble*, 429 U.S. 97, 103 (1976).  This constitutional requirement extends to medical care for the purpose of relieving pain and suffering and includes an obligation to actually provide medical care to those it incarcerates, not merely the opportunity to have access to care. *Id.* at 103-104.  In order to establish a violation of Plaintiff's constitutional right to adequate medical care, evidence must show (i) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference. *Natale*, 318 F.3d at 582 (citing *Rouse v.*

5

*Plaintier*, 182 F.3d 192, 197 (3d Cir. 1999)).  The Third Circuit has found deliberate indifference "where there was 'objective evidence that [a] plaintiff had serious need for medical care,' and prison officials ignored that evidence."  *Natale*, 318 F.3d at 580-581 (citing *Nicini*, 212 F.3d at 815 n. 14).  The Third Circuit has also found deliberate indifference where "necessary medical treatment is delayed for non-medical reasons."  *Monmouth County Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) (citation omitted).

      The Court finds that plaintiff has come forward with evidence showing that she suffered from a serious medical need which manifested itself initially as severe pain in her lower leg for which she received delayed medical treatment despite numerous requests.  The Court finds that there is a legitimate fact question about whether the Defendants' inaction amounted to deliberate indifference to Plaintiff's medical needs.  There was a delay of approximately seven days from the date that Plaintiff first complained of severe pain in her left calf and the date of the ultrasound, which revealed that Plaintiff suffered from DVT.  Plaintiff's experts have opined that there was no justifiable excuse for the delay.  Thus, the Court finds that a genuine issue of material fact exists about whether Plaintiff's constitutional rights were violated.

      The state's constitutional duty to provide medical care to inmates is non-delegable.  *West v. Atkins*, 487 U.S. 42 (1988); *Black v. Indiana Area School District*, 985 F.2d 707, 711 (3d Cir. 1993).  The fact that Monmouth County contracted with Correct Care to provide medical care to pre-trial detainees at MCCI does not relieve the Moving Defendants of liability.  When contracting for prison health services, a municipality or other local government unit still remains liable for constitutional deprivations caused by the policies or customs of the health service.  *See Andrews v. Camden County*, 95 F. Supp. 2d 217, 228 (D.N.J. 2000) (citing *Miller v. Correctional Medical Systems*, 802 F. Supp. 1126, 1132 (D.Del. 1992)).  A municipality or other local

government unit may be held liable in situations where a pattern, practice, or custom causes a constitutional violation. *Monell v. Department of Social Services*, 436 U.S. 658, 690, 98 S. Ct. 2018, 56 L.Ed.2d 611 (1978). Such liability can be based on a single incident: a policy, practice or custom claim does not require proof of a long-standing practice. *Pembaur v. City of Cincinnati*, 475 U.S. 467, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986). The Third Circuit has explained:

> There are three situations where acts of a government employee may be deemed to be the result of a policy or custom of the governmental entity for whom the employee works, thereby rendering the entity liable under § 1983. The first is where the appropriate officer or entity promulgates a generally applicable statement of policy and the subsequent act complained of is simply an implementation of that policy. The second occurs where no rule has been announced as policy but federal law has been violated by an act of the policymaker itself. Finally, a policy or custom may also exist where the policymaker has failed to act affirmatively at all, [though] the need to take some action to control the agents of the government is so obvious, and the inadequacy of existing practice so likely to result in the violation of constitutional rights, that the policymaker can reasonably be said to have been deliberately indifferent to the need.

*Natale,* 318 F.3d at 584 (footnote and citations omitted). Plaintiff's allegations in this case fall most appropriately under the third situation described above – i.e., where a policymaker has failed to act affirmatively at all, even though the need to take some action is so obvious as to result in the violation of constitutional rights.

The Court finds that Plaintiff has presented sufficient evidence tending to show that, at the time she was incarcerated, an inadequate system of receiving and treating pre-trial detainees' medical needs was in place at MCCI. Specifically, Plaintiff points to evidence tending to show the following: (1) the failure to establish an adequate sick call policy by which urgent medical needs may be addressed, (2) the failure to establish an adequate procedure by which urgent ultrasounds are provided to pre-trial detainees and (3) the failure to provide an adequate procedure for treating non-emergent medical complaints with potentially life-threatening medical

complications.  A reasonable juror could find that the failure to establish proper policies and procedures by the Moving Defendants under such circumstances created a risk that was so obvious so as to result in the violation of constitutional rights of pre-trial detainees at MCCI.

## IV.	Conclusion

For the reasons set forth above, Moving Defendants' motion for summary judgment is denied.  An appropriate Order accompanies this Opinion.

/s/ JOEL A. PISANO
United States District Judge

Dated: January 7, 2011